SAVANNAH SUGAR REFINING CORP. *v.* UNITED STATES (No. 3546)[1]

United States Court of Customs and Patent Appeals, December 5, 1932

*Hitch, Denmark & Lovett* (*Robert M. Hitch* and *Archibald B. Lovett* of counsel) for appellant.

*Charles D. Lawrence,* Assistant Attorney General (*Daniel P. McDonald,* special attorney, of counsel), for the United States.

*James L. Gerry,* and *De Vries, Crawford & McCook* (*Marion De Vries* of counsel), *amici curiae.*

---

[1] T. D. 46061.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the Third Division of the United States Customs Court overruling appellant's protest against the classification by the collector of customs at Savannah, Ga., of certain merchandise described in the collector's report to the said Customs Court as "sugar diluted with water."

The merchandise was imported from Cuba under the Tariff Act of 1930 and was classified under paragraph 501 thereof as "Sugars * * * testing by the polariscope not above seventy-five sugar degrees," duty being assessed at the rate of 1.7125 cents per pound, less 20 per centum on account of the Cuban reciprocity treaty.

The protest claims that same should be held dutiable at the rate of one-fourth of 1 cent per gallon, as "sugar sirups, not specially provided for," within the meaning of paragraph 502 of said act, or at the rate of 20 per centum ad valorem as "articles manufactured, in whole or in part, not specially provided for," within the meaning of the latter portion of paragraph 1558 thereof, the deduction of 20 per centum by reason of the Cuban reciprocity treaty, of course, to apply to any assessment made.

The concluding paragraph of the opinion of the trial court is as follows:

We hold this is an article not enumerated, manufactured of two or more materials. It was admitted at the hearing that the component material of chief value in the product is sugar. We therefore conclude that the merchandise was properly assessed at the rate applicable to sugar under paragraph 501 of the Tariff Act of 1930, by virtue of the mixed-material clause in paragraph 1559 thereof.

Authorities were cited and judgment rendered for defendant.

It is deemed proper to quote paragraphs 501 and 502 of the Tariff Act of 1930 in full at this point:

PAR. 501. Sugars, tank bottoms, sirups of cane juice, melada, concentrated melada, concrete and concentrated molasses, testing by the polariscope not above seventy-five sugar degrees, and all mixtures containing sugar and water, testing by the polariscope above fifty sugar degrees and not above seventy-five sugar degrees, 1.7125 cents per pound, and for each additional sugar degree shown by the polariscopic test, three hundred and seventy-five ten-thousandths of 1 cent per pound additional, and fractions of a degree in proportion.

PAR. 502. Molasses and sugar sirups, not specially provided for, testing not above 48 per centum total sugars, one-fourth of 1 cent per gallon; testing above 48 per centum total sugars, two hundred and seventy-five one-thousandths of 1 cent additional for each per centum of total sugars and fractions of a per centum in proportion. Molasses not imported to be commercially used for the extraction of sugar or for human consumption, three one-hundredths of 1 cent per pound of total sugars.

The pertinent portion of paragraph 1558 reads:

PAR. 1558. That there shall be levied, collected, and paid on the importation of * * * all articles manufactured, in whole or in part, * * * a duty of 20 per centum ad valorem.

Paragraph 1559 is quoted in full:

PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; and if any nonenumerated article equally resembles two or more enumerated articles on which different rates of duty are chargeable, there shall be levied on such nonenumerated article the same rate of duty as is chargeable on the article which it resembles paying the highest rate of duty; and on articles not enumerated, manufactured of two or more materials, the duty shall be assessed at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of chief value; and the words "component material of chief value," wherever used in this Act, shall be held to mean that component material which shall exceed in value any other single component material of the article; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article. If two or more rates of duty shall be applicable to any imported article, it shall be subject to duty at the highest of such rates.

Appellant is engaged in refining sugars and imports large quantities of raw sugars for the sole purpose of refining them. Besides the sugar content, raw sugar contains other solids, such as coloring matter, grit, water, etc., and sometimes contains other sugars than sucrose. In the refining process these impurities are removed, and refined sugar is approximately 100 per centum pure sucrose.

The raw sugars are imported usually in bags and are assessed for duty according to the degree of sugar content as shown by polariscopic test.

Some time in the fall of 1930, after the passage of the Tariff Act of 1930, the president of appellant company went personally to Cuba and there bought 4,225 pounds of raw sugar. Under his directions a mixture of this sugar was made with 530 gallons of water, one gallon of formaldehyde being added solely for the purpose of preserving the mixture from souring.

This mixture thus prepared was placed in eight drums and imported in that condition, being entered for duty on November 1, 1930.

The analysis of the Government chemist at the port of entry showed the following:

| | |
|---|---|
| Polarization | 45.50 sugar degrees. |
| Specific gravity | 1.21863. |
| Brix | 47.6. |
| Sucrose | 45.54 per cent. |
| Reducing sugars | .42 per cent. |
| Total sugars | 45.96 per cent. |

The result of an analysis of a sample by appellant's chemist in charge is stated wholly in percentages and shows "polarization 45.40%." There is no disagreement between the parties as to the fact that the polariscopic test showed less than 50 sugar degrees in the merchandise as imported. This was due to the amount of water in the mixture. With the water disregarded and the sugar alone considered, the amount of duty assessed ran much higher than the duty based upon the importer's entry.

It will be observed that paragraph 501, *supra*, makes provision for various articles, the first of which is "Sugars." It, apparently, embraces all sugars and fixes a duty of 1.7125 cents per *pound* upon those testing by the polariscope "not above seventy-five sugar degrees," with an additional duty per *pound* for each additional sugar degree or fraction thereof above 75 sugar degrees. Another article in the same paragraph is—

all mixtures containing sugar and water, testing by the polariscope above fifty sugar degrees and not above seventy-five sugar degrees.

Any of such mixtures above 50 sugar degrees and not above 75 sugar degrees are assessable at 1.7125 cents per *pound*, and an additional duty is then provided for each additional degree or fraction thereof above 75 degrees.

No specific provision appears to be made in paragraph 501, *supra*, for "mixtures containing sugar and water" testing by the polariscope 50 sugar degrees and under.

Paragraph 502, *supra*, likewise specifically names certain articles, one of which is "sugar sirups, not specially provided for, testing not above 48 per centum total sugars," and provides duty thereon to be assessed per *gallon*.

Appellant's consumption entry read:

8 drums sugar syrup (a mixture containing sugar and water testing not above 48 per centum total sugars).

The purpose of the importer in having the mixture prepared and in importing it in its prepared condition was frankly announced. It was in order to bring a test case and secure a judicial determination of the dutiable status of the merchandise. The customs officials seem to have been fully advised of this purpose in advance, and the transaction appears to have been free from any deception as to any material detail of what actually was done.

The question seems, indeed, to have been submitted to the Secretary of the Treasury prior to the date of importer's purchase in Cuba. On October 4, 1930, there was issued T. D. 44275, an administrative Treasury decision in the following language:

Sir: The bureau has before it for consideration and decision the question of the proper tariff classification of an article consisting of sugar diluted with water and testing approximately 48 sugar degrees.

Certain importers contended that this merchandise testing less than 50 sugar degrees is excluded from classification under paragraph 501 of the tariff act of 1930 and is properly dutiable as a sugar sirup under paragraph 502 of the said act.

If the mixture is not a sugar within the meaning of paragraph 501, then it is an article which, within the meaning of paragraph 1559, is one not enumerated which is manufactured of two or more materials. In such a case the paragraph provides that the duty shall be assessed at the highest rate at which it would be chargeable if the article were composed wholly of the component material of chief value. In this case the material of chief value is sugar, and it follows that duty would be assessable at the rate provided for sugar in paragraph 501.

The bureau has given this matter careful consideration and has reached the conclusion, following the reasoning of the Court of Customs and Patent Appeals in T. D. 41582 and T. D. 43376, that the product under consideration is not, within the meaning of paragraph 502, a sugar sirup and accordingly is not dutiable under the said paragraph.

It must be conceded that, in spite of the admixture of the water which makes the liquid low in polariscopic test, the article is in essence a sugar and accordingly is subject to duty under paragraph 501 of the tariff act at the rate of 1.7125 cents per pound as sugar testing by the polariscope less than 75°.

The classification by the collector in the instant case was, apparently, in accord with the opinion expressed in the last paragraph of the Treasury decision above quoted, that is, that the article "is in essence a sugar," and, the water being disregarded, the polariscopic test determined the duty as assessed.

The trial court took the view expressed in the third paragraph of said Treasury decision and applied the "two or more materials" provision of paragraph 1559, heretofore quoted.

The result, so far as the amount of duty is concerned, is the same under either classification.

A quite voluminous record was made up in the case, and four elaborate briefs have been filed. Of these briefs, one is by counsel for appellant, one by counsel for the Government, one by counsel representing the Domestic Sugar Producers' Association, and one by counsel representing the Hawaiian Sugar Planters Association. The two latter are filed under permission specially given by this court, counsel therein being treated as *amici curiae*. Oral arguments by counsel representing all four interests were presented at the hearing before us.

The opinion of the trial court is a comprehensive one and its substance is quite succinctly stated in appellant's brief as follows:

In the opinion handed down by the Customs Court (Tr. Rec. 246–282; T. D. 45477) it was held, in substance, that the sugar content of a solution determines whether it is or is not a sirup; that a sirup is a saturated solution of sugar and water; that there can be no distinction made as to whether a sugar sirup is intended for human consumption or is to be used otherwise; that the weight of the testimony established it to be a fact that the custom of trade and commerce has adopted the common meaning of a sirup, as heretofore judicially defined; that Congress legislated in full knowledge of this understanding of what is meant by the term "sugar sirups," and it must be presumed that it was intended to

use the term "sugar sirups" in the sense in which it had been heretofore defined; that it is difficult to understand how we could have a sugar sirup which is a saturated solution and at the same time testing not above 48 per centum total sugars, but so far as the record discloses there may be sugar sirups made of raw sugars that do not test above 48 per centum total sugars because of the percentages of other solids, and yet the solution may not contain more than 35 per centum water; that appellant's importation, being a mixture of sugar, water, and formaldehyde, was not a sugar sirup; that under the similitude clause of par. 1559 of the Tariff Act of 1930 similitude of use should be the principal if not the controlling factor; that the primary purpose of a tariff act is to raise revenue; that we have a right also to consider the protective feature in interpreting tariff statutes; that if we are to consider the revenue feature in passing on the question, then, since there is a similitude of use between appellant's importation and sugar, it ought to be classed under par. 501, if possible, while from the standpoint of the protective feature it would likewise serve better to classify it under that paragraph because it could come in competition with industries in this country that are producing raw sugar; that similitude can not be applied because it refers only to unenumerated articles, whereas sugar sirups are enumerated; that appellant's importation was an article not enumerated; that it was manufactured of two or more materials; and that it was dutiable at the rate applicable to its component material of chief value, to-wit, sugar, under the "mixed materials" clause of par. 1559; and hence that the duties were properly assessed at the rate applicable to sugar under par. 501 of the Tariff Act of 1930.

We think the only really important issue raised in appellant's assignments of error may be stated in a brief question: Is the imported merchandise a sugar sirup within the meaning of paragraph 502, *supra*, and dutiable thereunder at the rate of one-fourth of 1 cent per gallon, either directly or by virtue of the similitude provision of paragraph 1559 of the Tariff Act of 1930?

The article as imported is admittedly something which was prepared for the specific importation and entry made. The transaction was a frank and undisguised effort to so prepare raw sugar, suitable for use in appellant's business, that it could be imported with the payment of an amount of duty much less than the amount which has to be paid when the sugar is imported in its usual condition. It was not intended that it should enter into the general commerce of the country in the state in which it was imported. No use whatever has been satisfactorily shown that might be made of it except use in making refined sugars. So far as can be determined from the record it is entirely suitable to such use and none other. The particular importation involved was so used, mixed with other raw sugars imported in their usual condition.

No such article was known in trade or commerce at the time of the passage of the Tariff Act of 1930. It is, as stated by Government counsel, a "new, unique commodity." Also, as stated by Government counsel, it is "experimental," but it was not prepared or made up to be experimented with, in its imported state, as an article of food or as an article utilizable for any purpose except to be refined.

In a sense it seems to us that the effort is to experiment with the tariff law applicable to raw sugar rather than with the product itself.

It is true, of course, as declared in *Pickhardt* v. *Merritt*, 132 U. S. 252, that where articles of a certain kind were not being manufactured at the time of the passage of a tariff act, that fact—

does not withdraw them from the class to which they belong, when the language of the statute clearly and fairly includes them. But it is sufficient if it so includes them according to commercial understanding.

This doctrine has been applied in many cases, but the trouble for appellant here is that we are compelled to hold that the evidence in this case does not establish that the mixture of sugar and water with the slight quantity of formaldehyde is definable as sugar sirup according to commercial understanding. The facts of the case distinguish it from the line of cases cited.

As stated by the court below, in substance, no evidence was adduced showing that the product, as imported, has ever been bought and sold in the wholesale trade and commerce of the United States as sugar sirup. Indeed, except for the transaction involved, it was not shown that any such product ever existed either in the United States or anywhere else in the world, under any name, title, or designation whatsoever. So far as the record is concerned, the single importation at issue was *sui generis*.

It must be held that no commercial designation was proven.

When the common meaning of the term is considered, it must be borne in mind that we may not properly determine this simply by looking to broad and sweeping generalizations. Our primary duty is to ascertain and give effect to the intent of Congress, according to well-known and thoroughly established judicial rules and practices. In *United States* v. *Stone & Downer Co.*, 274 U. S. 225, 252, the Supreme Court of the United States said:

* * * the pole star of interpretation of statutes, whether it be of tariff acts or any other, must be the intention of Congress, when that can be clearly ascertained and is reasonably borne out by the language used.

The common meaning of terms used in a statute is always a matter of judicial knowledge. The courts may, in determining it, look to dictionaries and other reliable sources of information, including the testimony of witnesses, but such testimony is not binding upon the courts, and same may be accepted or rejected as appears proper. *United States* v. *A. Moscini*, 19 C. C. P. A. (Customs) 144, T. D. 45261.

Webster's International Dictionary defines "sirup":

Orig., a thick, viscid liquid made from the juice of fruits, herbs, etc., boiled with sugar; hence, any concentrated, more or less viscid, aqueous solution of sugar, either without admixture, as the *simple sirup* of pharmacy, or variously flavored or medicated, or obtained in an incompletely refined state, as in the

manufacture of cane sugar or of glucose:—applied specif. in cane-sugar manufacture to the concentrated juice before the separation of sugar, and to molasses refined and decolored for table use.

Funk and Wagnalls' New Standard Dictionary, under the term "Specif." gives the following:

(1) A saturated solution of sugar in water, often combined with some medicinal substance or flavored * * *. (2) The uncrystallizable portion of any saccharine substance, as sugar-cane juice, separated from the crystallizable sugar during the process of sugar-boiling, or that which drains from sugar in the process of separating or refining; called *molasses* by planters. (3) The condensed cane-juice before separation of the crystallizable sugar; so called specifically by planters.

Hackh's Chemical Dictionary says:

Sirup. Any concentrated aqueous solution of a carbohydrate; as, cane sugar with or without drugs. Simple—Syrupus simplex. An aqueous solution of cane sugar (83%) forming a thick viscous liquid of d. 1.313.

In promulgating regulations for the administration of the Food and Drug Act of June 30, 1906, the Department of Agriculture has stated the following:

11. Sugar sirup is the product made by dissolving sugar to the consistency of a sirup, and contains not more than 35 per cent of water.

In *Cresca Co. (Inc.)* v. *United States*, 15 Ct. Cust. Appls. 105, 106, T. D. 42185, this court said:

* * * A sirup is a saturated solution of sugar in water. See "sirup"—New Standard Dictionary. * * *

The foregoing definitions, together with others from different authorities, have been considered by us in connection with the testimony given by numerous witnesses in this case. From all of these we are unable to conclude that the mixture at issue is a sirup in the common meaning of that term, or that any such product was, within the contemplation or intent of Congress, to be regarded as falling within the designation of "sugar sirups" as those words are used in paragraph 502 of the Tariff Act of 1930.

In so holding we have not overlooked the argument made on behalf of appellant to the effect that Congress by providing for "sugar sirups testing *not above 48 per centum total sugars*" evidenced a purpose—

to take in all sugar sirups of all densities, starting at zero and going all the way up to and through saturated solutions.

If the mixture involved were a *sirup* this argument would, of course, be persuasive, but since it is not a sirup the situation is different. The argument is sound only upon the premise that the article is a sirup in the sense of paragraph 502, *supra*. This we do not think it is.

It is to be observed that Congress must have had clearly in mind a distinction between "sirups" and "mixtures containing sugar and water" and provided for them in different paragraphs. Congress also distinguished "sirups of cane, juice, melada" and "sugar sirups," for tariff purposes, the one being named in paragraph 501, *supra,* and the other in paragraph 502, *supra.*

It is of common knowledge, we understand, that each of the articles specified by name in paragraph 501, *supra,* is (unless it be already refined sugars as imported) transmuted into refined sugar, while those specified in paragraph 502, *supra,* generally are used for other purposes than that of being refined.

As to classification under paragraph 502, *supra,* by similitude by reason of the provision of paragraph 1559, Tariff Act of 1930, we do not think this may be properly done, because, in our opinion, it is not similar to any sugar sirups classifiable under paragraph 502, either in material, quality, or texture, and most certainly it is not similar thereto in the use to which it may be applied or to which it was in fact applied. It is not a sugar sirup, nor is it similar to a sugar sirup in any tariff sense. *Vide Cresca Co. (Inc.) et al.* v. *United States,* 17 C. C. P. A. (Customs) 83, T. D. 43376, and cases relating to the similitude doctrine therein cited.

Indeed, if there were a necessity for applying the doctrine of similitude in the instant case, we are of the opinion that considering the use of the article—solely transformation into refined sugar—it might be held more nearly to resemble the "sugars" provided for in paragraph 501, *supra,* than it does any thing named in paragraph 502, *supra.*

However, as we view the matter no occasion arises for any classification by similitude.

The construction and application of the statutes made by the trial court leads to a conclusion which seems to us to be entirely consistent with the texts of the various paragraphs of the tariff act considered and entirely consistent with the known intention of the legislative branch of the Government.

Neither are we able to agree that appellant's second alternative claim—that of classification as an unenumerated article under paragraph 1558—is good.

Assuredly, it is a matter of almost universal knowledge that the Congress which enacted the sugar schedule of the Tariff Act of 1930 had in mind and will the conscious purpose of doing two things, viz raise large revenues and protect the domestic sugar industry. In view of this fact it would be most surprising, indeed it would be rather astounding, to find that it had used language whose fair and reasonable construction would defeat, rather than promote, the ends known to have been intended.

Many collateral questions and issues have been discussed in argument and numerous authorities cited which we do not find it essential here to pass upon or review.

We find no error in the judgment of the United States Customs Court, and same is *affirmed*.