(C.D. 2268)

NATIONAL MOLASSES COMPANY OF CALIFORNIA, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 15, 1961)

*Lawrence & Tuttle* (*Edward N. Glad, Joseph Schwartz*, and *Barnes, Richardson & Colburn* of counsel) for the plaintiff.

*William H. Orrick, Jr.*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

RICHARDSON, Judge: This case involves two protests which have been consolidated for the purposes of trial. The merchandise covered by the protests was imported from Taiwan. It is described on the invoices as "distillery molasses" and was assessed with duty at the rate of 4 per centum ad valorem under the provision in 19 U.S.C.A., section 1001, paragraph 1555 (paragraph 1555, Tariff Act of 1930), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, for "waste, not specially provided for."

By amendment of the protests, it is claimed that the merchandise is properly dutiable at the rate of 0.014 cent per pound of total sugars under the provision for "molasses not imported to be commercially used for the extraction of sugar or for human consumption" in paragraph 502 of the same act, as modified by the Sixth Protocol to the General Agreement on Tariffs and Trade, T.D. 54108.

Plaintiff does not deny that the involved product is a waste but contends that it is a waste molasses and is more specifically provided for under the provision for molasses in paragraph 502, *supra*. Plaintiff asserts that the provision is an *eo nomine* designation and includes

all forms of molasses under the rule governing such designations and stated by the court in the case of *C. J. Tower & Sons* v. *United States*, 47 C.C.P.A. (Customs) 85, C.A.D. 734, as follows:

* * * it is well settled that, in the absence of a showing of a contrary legislative intent, an *eo nomine* provision for an article without terms of limitation includes all forms of the article.

Defendant concedes the validity of plaintiff's assertion with respect to the *eo nomine* character of the designation for molasses, but takes the position that the merchandise in issue is, in fact, not a molasses.

The case was submitted upon a record consisting of the official papers and the testimony of two witnesses, John Klempner, vice president and general manager of the plaintiff company, who appeared on its behalf, and Elmer J. Culp, technical director for the American Sugar Refining Co., who testified for the defendant.

The witness for plaintiff, whose experience with molasses extends over a period of 10 years, professed familiarity with many kinds of molasses. He defined molasses as a dark-brown, viscid liquid, the residue or byproduct of sugar extraction. He testified that he has been handling distillery molasses, which he indicated is another name for waste molasses, for 7 years and has imported both blackstrap and distillery molasses for 3 to 5 years. He stated that both of the last-named products are imported specifically marked "not for human consumption" and are used for cattle feeding. Although, on a few occasions, plaintiff has sold, in its imported condition, distillery molasses under that name, the instant merchandise was not so sold, but was mixed with blackstrap molasses to produce a product sold as a mixture for cattle feed.

The witness did not produce a sample of the product in issue but described it as a dark-brown, sirupy liquid, very similar to ordinary molasses, but slightly thinner, and not as sweet. He testified that distillery molasses is obtained through a fermentation process in which blackstrap molasses is diluted by the addition of water. Yeast is added. Fermentation takes place producing alcohol, which is channeled into receptacles, carbon dioxide, which escapes into the air, and a residue known as distillery molasses. According to the witness, the sugar content of molasses can vary greatly depending upon the country of origin and the process by which the sugar is extracted from the original product. The total sugar content of the samples of the involved merchandise analyzed by the United States Customs Laboratory, as shown on reports in evidence as part of the official papers, is 12.3 per centum for one of the importations and 13 per centum for the other.

By the testimony of its witness, Elmer J. Culp, defendant sought to show that the instant merchandise is not a molasses and is not so considered in the trade. The witness is a chemical engineer, and the

company which he represents is a member of the United States Cane Sugar Refiners Association, an association concerned with the standardization of terminology in connection with sugar and molasses. He described molasses as a "dark-colored, syrupy by-product that originates as a residue from the manufacture of sugar." The witness stated that he does not know of a molasses with a sugar content less than 46 per centum, and, in the course of his work, has never heard of the term "distillery molasses." Based on his knowledge, experience, and observation, and upon consideration of the sugar content of the product in question and of the method by which it was obtained, the witness was of the opinion that the involved product is not a molasses, and is not considered as such in the trade, but rather corresponds to a residue which results from the fermentation of molasses to produce alcohol and which is known as molasses distiller's condensed solubles.

Upon cross-examination, the witness admitted that he has had no experience with the purchase or sale of molasses distiller's condensed solubles and could not say that such product is not bought and sold under the name of distillery molasses. He agreed that there are various types and kinds of molasses and that the sugar content of molasses varies. The witness stated that the residue resulting from the fermentation of blackstrap molasses to produce alcohol contains all of the constituents of the original product, except that sugar which was fermented, and that these constituents are nutrients which serve to make the product desirable as an animal feed.

In order to decide whether the involved merchandise is dutiable under the provision for molasses in paragraph 502, as modified, *supra*, it is necessary to determine what is meant by the term "molasses," as used therein, and whether the instant merchandise comes within the meaning of the term. Neither party has alleged commercial designation. In the absence of proof of such designation, the common meaning of tariff terms must be given controlling effect. *Armand Schwab & Co., Inc.* v. *United States*, 32 C.C.P.A. (Customs) 129, C.A.D. 296. Certain rules relative to the ascertainment of the common meaning of tariff terms are stated in the case of *United States* v. *Mercantil Distribuidora, S.A., Joseph H. Brown*, 43 C.C.P.A. (Customs) 111, 117, C.A.D. 617, in the following language:

* * * The common meaning of a tariff term is a question of law for the court. *United States* v. *Shalom & Co.*, 33 C.C.P.A. (Customs) 29, C.A.D. 311. In determining the common meaning of tariff terms, courts may receive evidence as to such meaning, but such evidence is merely advisory to the court. *United States* v. *O. Brager-Larsen*, 36 C.C.P.A. (Customs) 1, C.A.D. 388. The courts are not bound by such testimony, but will ordinarily chiefly rely upon decisions of the courts and upon the definitions found in dictionaries and other lexicographical authorities. *United States* v. *Florea & Co., Inc.*, 25 C.C.P.A. (Customs) 292, 296, T.D. 49396.

"Molasses" is defined in the dictionaries as follows:

The thick, brown or dark-colored, viscid sirup which drains from sugar in the process of manufacture. Ordinarily the first molasses obtained in making raw sugar is boiled down till more sugar can be removed, leaving "second molasses." This, in turn, may yield a third sugar, and "third molasses," an impure sticky product used in making industrial alcohol, stock feeds, etc. [Merriam-Webster New International Dictionary, unabridged, 2d edition.]

A viscid dark-colored uncrystallizable liquor which in the process of manufacture is separated from crystallizable sugar by draining: sometimes limited to that obtained in the making as distinguished from the refining process.

Usually the molasses after its separation from the raw sugar is still rich enough to warrant a second boiling, yielding "second molasses," which is again reboiled, yielding "third molasses." This is utilized in various ways, as for making rum and (mixed with glucose) table sirups, for feeding stock, and as a fertilizer. [Funk and Wagnalls New Standard Dictionary, 1956.]

The following description appears in the Dictionary of Tariff Information, 1924:

Molasses is a by-product of the sugar industry. It is what remains of the juice after a part of the sugar has been removed by boiling the juice until a part of the sugar is crystallized and separated from its liquid. Sirup is a direct product of the juice of cane or other sugar plants boiled to the desired consistency without removing any of the sugar.

\* \* \* \* \* \* \*

Molasses is produced from both beet and cane juice, that obtained from beet juice being unsuitable for human food. Beet and low-grade cane molasses (blackstrap) are used in the manufacture of industrial alcohol and as a cattle feed. Cane molasses is also used in certain countries in the manufacture of rum. [Page 487.]

The Summary of Tariff Information, 1929, which was prepared for the use of the Committee on Ways and Means of the House of Representatives when the Congress had under consideration the bill which was later enacted as the Tariff Act of 1930, contains the following:

Molasses is either a by-product or a co-product of the sugar industry. It is what remains of the juice of sugar plants after the principal impurities have been removed, the juice boiled down, and a part of the sugar crystallized and removed. Some molasses is also obtained as a by-product when raw sugar is reduced to the refined state.

Molasses is roughly classed as edible or as blackstrap (inedible). Practically no beet molasses in the natural state is edible. If cane molasses contains sugar which could be removed by further concentration of the molasses the residue is a co-product with sugar and generally is edible or is used for the further extraction of sugar.

If all of the sugar which can be separated profitably has been removed from the concentrated juice, the molasses is a by-product called blackstrap, waste molasses or industrial molasses, and is usually unfit for human consumption or for the further extraction of sugar. \* \* \*

Beet molasses and cane molasses not suitable for human food (blackstrap) are used in the manufacture of industrial alcohol, as an ingredient of cattle feeds, and to some extent, in the manufacture of yeast, vinegar, and other products. [Pages 984–985.]

\* \* \* \* \* \* \*

Blackstrap or waste molasses is a by-product in all cane and beet sugar mills. [Page 985.]

In the case of *Balfour, Guthrie & Co.* v. *United States*, 14 Ct. Cust. Appls. 78, 80, T.D. 41582, the court, in considering the classification of an importation of concrete molasses, noted that the molasses was a product which resulted from the making of sugar from sugar cane and stated:

* * * Sugar cane, after it is cut and taken from the fields, is run through a series of rollers or crushers, which produces a juice containing a high percentage of sucrose or cane sugar. The boiling of the juice in vacuum pans crystallizes a percentage of the cane sugar or sucrose, thereby producing raw sugar. Some of the sucrose or cane-sugar content, however, is not crystallized by the first boiling, but is drained off in a viscous liquor known as molasses. If the molasses be rich enough in sugar, it is subjected to a boiling which yields additional crystallized sugar and a second molasses. The boiling of the second molasses may result in a further crystallization of sugar, and also a third molasses, which is used for the making of rum and alcohol, and for the manufacture of food for stock. See Molasses, Second molasses, and Third molasses, New Standard Dictionary.

The foregoing definitions, as well as the description given by the witness for the defendant and set forth, *supra*, uniformly show that molasses, as that term is commonly understood, is a dark-colored, viscid, sirupy liquid, which is obtained as a byproduct of the manufacture of sugar. This derivation of molasses as a residue from sugar manufacture was also recognized by the witness for the plaintiff, for he testified that (R. 5):

Molasses is a by-product of sugar extraction. When raw sugar is refined the white sugar remains as the chief product; molasses remains as the by-product.

The definitions further show that the method of sugar manufacture from which molasses results commonly involves a boiling process in which some of the sugar in the saccharine fluid being boiled is crystallized. Except for the fact that the instant merchandise is a liquid, dark brown in appearance, and of a sirupy consistency, it does not appear to respond to the meaning of molasses, as shown in the definitions, for, by the undisputed evidence, it is a residue resulting not from the manufacture of sugar, but rather from the manufacture of alcohol. Furthermore, it was not obtained by a boiling off process but through a fermentation process in which the sugar in blackstrap molasses was fermented and converted into alcohol. Therefore, inasmuch as it is not a byproduct of the manufacture of sugar, we are of the opinion that the involved product is not molasses within the common meaning of that term, as expressed in the quoted definitions, and, for that reason, is not within the purview of the designation for that article in paragraph 502, *supra*, and we so hold.

Plaintiff points out, as militating in favor of its position, the fact that merchandise such as the involved product is bought and sold

as "distillery molasses" and is utilized, as is blackstrap molasses, for cattle feeding. However, it is obvious that if a product is not within the common meaning of the term "molasses," the fact that plaintiff purchased it under a name which included that term, and so sold it on several occasions, will not suffice to bring it within the statutory term. See *United States* v. *Wilfred Schade & Co.*, 16 Ct. Cust. Appls. 366, T.D. 43092. Nor will the further fact that it is used for animal feeding, and that this is also one of the recognized uses of molasses, serve to accomplish that result, for it is apparent that the designation for that article in paragraph 502, *supra*, is not a use designation.

Since we have found the plaintiff's contention that the merchandise in issue should be classified as "molasses not imported to be commercially used for the extraction of sugar or for human consumption" under paragraph 502, *supra*, to be without merit, the protest must be and is overruled.

Judgment will be entered accordingly.