(C.D. 2272)

ROBERT G. LYNCH CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 29, 1961)

*Sharretts, Paley & Carter* (*Richard F. Weeks* and *Joseph F. Donohue* of counsel) for the plaintiff.

*William H. Orrick, Jr.,* Assistant Attorney General (*Sheila N. Ziff, Richard H. Welsh,* and *Murray Sklaroff,* trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges; DONLON, J., concurring

RICHARDSON, Judge: This protest involves the importation of 400 bags containing what was described on the consumption entry as "Sweet Green Livestock Feed Sugar" "(Not for human consumption)," weighing approximately 40,000 pounds, which were shipped by Central Romana Corp. from the Dominican Republic, October 10, 1955, to the Robert G. Lynch Co. of Washington, D.C., arriving at New York City, the port of unlading, October 26, 1955. According to a polariscopic test, the merchandise tested 99.7 sugar degrees. The evidence indicates that it is chiefly used as a feed constituent in feed for livestock and poultry as a source of energy and as a palatability factor. (R. 119.)

Duty on this shipment, under entry No. 780044, was tendered under 19 U.S.C.A., section 1001, paragraph 502 (paragraph 502 of the Tariff Act of 1930). It was classified by the collector of customs of New York City as raw sugar and assessed with duty at the rate of 0.00659687 cent per pound as sugar under 19 U.S.C.A., section 1001, paragraph 501 (paragraph 501 of the Tariff Act of 1930) and internal revenue tax at the rate of 0.00532375 cent per pound under 26 U.S.C.A., section 4501. The liquidation order of the collector was entered April 27, 1956.

The plaintiff claims the merchandise is not, in fact, sugar and that it should be classified as molasses not imported to be commercially used for the extraction of sugar for human consumption under paragraph 502 of the Tariff Act of 1930, by virtue of the similitude provision in paragraph 1559 of the Tariff Act of 1930, as amended. It also claims, alternatively, by amendment made at the trial, that the internal revenue tax imposed pursuant to 26 U.S.C.A., section 4501, was improperly assessed.

The pertinent provisions of the statutes, as amended and as modified by Presidential proclamations pursuant to trade agreements (T.D. 52739), are as follows:

[Tariff Act of 1930 (19 U.S.C.A., sec. 1001)]:

Par. 501 Sugars * * * testing by the polariscope * * * not over 75 sugar degrees * * *_____ 0.428125¢ per lb.
(plus additional taxes depending upon the polariscopic content)

502 Molasses and sugar sirups, not specially provided for, * * * Molasses not imported to be commercially used for the extraction of sugar or for human consumption, * * *_____ 0.014¢ per lb. of total sugars

1559(a) Each and every imported article, not enumerated in this chapter, which is similar in the use to which it may be applied to any article enumerated in this chapter as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; * * *. [As amended Sept. 1, 1954, c. 1213, title II, § 201, 68 Stat. 1137.]

[Revenue Act of 1954, 26 U.S.C.A., sec. 4501(b)]:

In addition to any other tax or duty imposed by law, there is hereby imposed, under such regulations as the Secretary or his delegate shall prescribe, a tax upon articles imported or brought into the United States as follows:

(1) On all manufactured sugar testing by the polariscope 92 sugar degrees_____ 0.465¢ per lb.
and for each additional sugar degree shown by the polariscopic test and fractions of a degree_____ 0.00875¢ per lb.
additional in proportion

[26 U.S.C.A., sec. 4502]:

(3) Manufactured sugar.—The term "manufactured sugar" means any sugar derived from sugar beets or sugarcane, which is not to be, and which shall not be, further refined or otherwise improved in quality; except sugar in liquid form which contains nonsugar solids (excluding any foreign substance that may have been added or developed in the product) equal to more than 6 per centum of the total soluble solids and except also sirup of cane juice produced from sugarcane grown in continental United States. The grades or types of sugar within the meaning of this definition shall include, but shall not be limited to, granulated sugar, lump sugar, cube sugar, powdered sugar, sugar in the form of blocks, cones, or molded shapes, confectioners' sugar, washed sugar, centrifugal sugar,

clarified sugar, turbinado sugar, plantation white sugar, muscovado sugar, refiners' soft sugar, invert sugar mush, raw sugar, sirups, molasses, and sugar mixtures.

The questions presented by this protest are:

1. Does the merchandise involved come under the *eo nomine* provision for "sugars" in paragraph 501?

2. If question number 1 is answered in the negative, is the merchandise involved dutiable, by virtue of the similitude clause in paragraph 1559, to "sugars" under paragraph 501 as being more similar in the manner of its use than to molasses not imported to be commercially used for the extraction of sugar or for human consumption under paragraph 502?

3. Does the merchandise come within the definition of manufactured sugars subject to the internal revenue tax imposed under section 4501 of the Internal Revenue Code?

According to the report of the United States Customs Laboratory and the testimony of witnesses for the plaintiff, the merchandise appears to be raw sugar, to which a green dye has been added.

The laboratory report reads as follows:

Chemical and spectrophotometric examination shows that the sample consists of colored sugar crystals and has a polariscopic test of 99.7 sugar degrees.

It contains approximately 16 parts per million of a dye similar to Brilliant Blue FCF. We find no evidence of any other added material. It also contains some natural coloring matter having the characteristics of that found in turbinado sugar. This does not rule out the presence of some refined sugar.

Mr. C. C. Redman, manager of the Central Romana Corp., in response to interrogatory No. 5, propounded to him by the plaintiff, stated that the merchandise was made from: "* * * sugar cane juices with use of normal raw sugar manufacturing methods up to the point of discharge from the vacuum pan to the crystallizer. The separation of the mother liquor from the sugar crystal was carried out in the usual centrifugal machine, but at this point the process of manufacture differed slightly, in that in addition to the use of wash water the sugar in the centrifugal was steamed also and, a dye added. This resulted in the necessity of cooling the sugar as it was discharged and, this was done by tumbling the sugar over a rotating screen."

In response to interrogatory No. 6, he stated: "Nothing was done, other than mentioned above which would change its classification as a raw sugar."

Mr. Lynch, former president of the importer company, described the merchandise as "sugar * * * sweet green livestock sugar" (R. 11–12) and "a raw sugar that was free-flowing and colored green." (R. 88).

The court inquired of Mr. Lynch: "So the principal distinguishing feature is that a dye has been added," and Mr. Lynch replied,

"That is right. It is *a raw sugar with green dye*." [Italics added.] (R. 45.) Mr. Lynch admitted that the dyestuff as certified by the Food and Drug Administration was suitable for use in foodstuffs edible for human consumption (R. 50), but stated that the presence of the dye would make the merchandise a product *unacceptable to him personally* as a product commercially suitable for being refined into refined sugar.

Another witness for plaintiff, Mr. Roland C. Quinn, vice president of the Pierce Grain Corp. of Buffalo, N.Y., which manufactures animal and poultry feeds, testified that there was no difference between raw sugar and the involved merchandise, except in color (R. 71). Mr. Crowe, also a witness for the plaintiff and general manager of Keiser & Co., Inc., sugar broker, testified to the same effect. (R. 107–108.) Raw sugar is generally amber in color, while the merchandise in question is green. Mr. Quinn stated, on cross-examination, that both are raw sugar in commerce.

Plaintiff seeks to limit paragraph 501 to "raw sugars," "refined sugars," "sugars used only for human consumption," or "sugars that are to be manufactured or refined." Paragraph 501 provides for "sugars," without words of limitation. It embraces not only pure sugar, as defined in the Webster's New International Dictionary (1955) which plaintiff cites, but all sugars, including the sugar in issue. *Savannah Sugar Refining Corp.* v. *United States*, 20 C.C.P.A. 272, 273. An *eo nomine* statutory designation of an article without limitation or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary and without proof of commercial designation will include all forms of the article. *B. A. McKenzie & Co., Inc., et al.* v. *United States*, 47 C.C.PA. (Customs) 42, C.A.D. 726; *Nootka Packing Co. et al.* v. *United States*, 22 C.C.P.A. 464; *Smillie & Co.* v. *United States*, 11 Ct. Cust. Appls. 199.

Plaintiff stresses the fact that the merchandise was used, as is molasses, in animal feeds. Molasses, as that term is commonly understood, is not a sugar, but a dark-colored, viscid, syrupy liquid, which is obtained as a *byproduct* of the manufacture of sugar. *National Molasses Company of California, Inc.* v. *United States*, 46 Cust. Ct. 267, C.D. 2268. An *eo nomine* designation applies to all forms of an article irrespective of the use to which it may be put, where, as here, there is no showing of an intention on the part of Congress to distinguish between raw sugar and raw sugar, dyed green, on the basis of suitability for particular uses. *United States* v. *Page N. Goffigon*, 43 C.C.P.A. (Customs) 172, C.A.D. 625. Paragraph 501 provides for "sugars" with the rate of duty based upon the sugar degree content shown by the polariscopic test. On the other hand, in paragraph 502, a distinction is made and a different rate of duty prevails on molasses, not specially provided for, and molasses not imported

to be commercially used for the extraction of sugar or for human consumption. The failure of Congress to employ similar language with respect to sugar suggests there was no intention to distinguish between grades of sugar based on their suitability for particular uses, but rather only on the degree of sugar content as measured by the polariscope.

Further, it has not been shown that the involved merchandise is a raw sugar which has been processed to such a degree that it no longer can be used for a large portion of its original potential uses. It is admitted that it is a raw sugar, dyed green. There is no showing that the green dye on the crystals cannot be washed off and the crystals made white again and further refined by clarifying, discolorizing, and recrystallizing. Even assuming that the dye cannot be washed off, it is admitted that the sugar is edible in its present form (R. 50), and it has not been established that the public would refuse to buy refined green sugar for human consumption. It presently buys much less attractive brown sugar for human consumption. While the largest use of sugar is for sweetening or otherwise conditioning foods in the household and in the food industries, it also is used for nonfood industrial purposes, 13 Encyclopedia of Chemical Technology 224.

We are of the opinion there are no circumstances present in this case which would require a departure from the general rule that an *eo nomine* designation, without limitation, includes all forms of the thing designated. It follows that the merchandise was properly held by the collector to be dutiable as sugar under paragraph 501 of the Tariff Act of 1930, regardless of whether it was suitable for use in animal feeds as a sweetener, and irrespective of the intention of the importer in having it dyed green.

Even assuming a different conclusion on the *eo nomine* designation, the merchandise was not a sugar within the meaning of paragraph 501, as modified, *supra*, the record definitely establishes that while sugar and molasses are sweeteners, the raw sugar herein is directly interchangeable only with other raw or refined sugars and not with molasses. (R. 70–73, 95.) Thus, if a classification by similitude were appropriate, the merchandise would have to be classified by similitude in use under the sugar provision of paragrah 501, as modified, *supra*. It is not similar to molasses in any tariff sense.

The merchandise comes within the definition of manufactured sugar, subject to internal revenue tax imposed under section 4501 of the Internal Revenue Code.

Section 4502(3), which defines "manufactured sugar," provides that "the grades or types of sugar within the meaning of this definition shall include, *but shall not be limited to*, granulated sugar, lump sugar, cube sugar, powdered sugar, sugar in the form of blocks, cones,

or molded shapes, confectioners' sugar, washed sugar, centrifugal sugar, clarified sugar, turbinado sugar, plantation white sugar, muscovado sugar, refiners' soft sugar, invert sugar mush, raw sugar, sirups, molasses, and sugar mixtures."

It is noted that the above definition includes turbinado sugar which is partially refined sugar. "Sweet Green Livestock Feed Sugar" is similar to turbinado sugar, dyed green. The addition of the green dye does not remove it from the partially refined or manufactured classification. The definition also includes "raw sugar." Plaintiff's witnesses clearly established that the involved merchandise is a raw sugar, to which a green dye has been added. Mr. C. C. Redman, manager of the Central Romana Corp., stated, in reply to interrogatory No. 5, that the merchandise was made from "raw sugar *manufacturing methods* up to the point of discharge from the vacuum pan to the crystallizer." [Italics added.] Also, section 4502(3) states specifically that its application is not limited to the sugars specifically enumerated, thus indicating a congressional intention to impose this tax on all sugar substances.

We hold, therefore, that the merchandise involved herein, "Sweet Green Livestock Feed Sugar," is a "sugar" within paragraph 501 of the Tariff Act of 1930, as modified, *supra*, and, as a manufactured sugar within section 4502(3) of the Internal Revenue Code, is subject to the internal revenue tax imposed under section 4501 of the Internal Revenue Code.

The protest is overruled. Judgment will be rendered accordingly.

CONCURRING OPINION

DONLON, Judge: I concur in the result. On the facts of record, the statute does not permit plaintiff to invoke the similitude provision of paragraph 1559, as it seeks to do.

This merchandise was classified as sugar. The evidence shows that it is sugar. Sugar is an enumerated article. Plaintiff claims that this sugar was imported for the same use as a use that is enumerated for molasses; and, on that basis, plaintiff contends that its sugar should be classified as molasses, by invoking the similitude clause of paragraph 1559.

This is something plaintiff may not do.

It is well established that before the similitude clause may be invoked, all dutiable enumerations must be found to be inapplicable, except only paragraph 1558. See, 4 Customs Law Digest 156, *et seq.*, and cases there cited.

Plaintiff has made no case for classification of this sugar under the nonenumerated provisions of paragraph 1558. Therefore, plaintiff may not invoke the similitude clause of paragraph 1559.