NOOTKA PACKING CO. ET AL. *v.* UNITED STATES (No. 3759)[1]

---

[1] T. D. 47464.

United States Court of Customs and Patent Appeals, January 7, 1935

*Lawrence & Tuttle* (*Frank L. Lawrence* of counsel) for appellants.
*Joseph R. Jackson*, Assistant Attorney General (*Ralph Folks* and *Daniel I. Auster*, special attorneys, of counsel), for the United States.

[Oral argument October 4, 1934, by Mr. Folks; submitted on brief by appellants]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Merchandise, consisting of minced razor clam meat, in cans, packed in British Columbia, Canada, was classified by the collector at the port of Seattle, Wash., as "clams * * * packed in air-tight containers" and assessed with duty at 35 per centum ad valorem under paragraph 721 (b) of the Tariff Act of 1930. The importers protested said classification, claiming, *inter alia*, that the goods were free of duty under paragraph 1761 of said act as shellfish, prepared or preserved. This claim is the only one relied on in this court. From the judgment of the United States Customs Court, First Division, overruling the protest, importers have appealed to this court.

The two competing tariff provisions follow:

PAR. 721. (b) Clams, clam juice, or either in combination with other substances packed in air-tight containers, 35 per centum ad valorem.

PAR. 1761. Shrimps, lobsters, and other shellfish, fresh or frozen (whether or not packed in ice), or prepared or preserved in any manner (including pastes and sauces), and not specially provided for.

The uncontradicted testimony of the two witnesses for the importers shows that the involved merchandise consists of razor clams which, after shelling, have had the stomachs, entrails and part of the necks removed, and which have been washed, drained and put through a mincer; that this clam meat is put in cans of two sizes, referred to in the record as "half pound" and "picnic" sizes, so as to half fill them; that the cans are then filled with a brine "partly salt and partly fresh water," "for seasoning and delivery," are steamed about 5 minutes to produce a vacuum, and are sealed and cooked for a period of from 1 hour 15 minutes to 1 hour 22 minutes; that the merchandise is shipped in this condition and is ready to eat; that there is no clam juice produced or added to the product. The average size of the meat of one of the clams, after removal from the shell, is 5½ inches, the maximum length shown being 8 inches, and the weight of the same being from 2½ to 5 ounces. The contents of the so-called "half pound" tins is about 5 ounces. An examination of the exhibits repre-

senting the merchandise shows that the cans are about one-half full of clam meat, cut into pieces ranging from one-half inch in length to the size of small peas, immersed in a milk-colored juice. No testimony was offered by the Government.

The decision of the trial court is brief, and, for supporting authority, relies upon its decisions in *Walter T. Ueland et al.* v. *United States*, T. D. 46025, 62 Treas. Dec. 617, and *Alexander & Baldwin, Ltd.* v. *United States*, Abstract 24390, 63 Treas. Dec. 1584. The last-cited case was affirmed by this court in *Alexander & Baldwin, Ltd.* v. *United States*, 21 C. C. P. A. (Customs) 558, T. D. 46988, subsequent to the decision of the trial court in the instant case.

Both sides agree that the issue is whether the merchandise is properly dutiable as "clams * * * in air-tight containers" or entitled to free entry as "other shellfish * * * prepared or preserved * * * not specially provided for."

The importer contends that the involved merchandise is not "clams" for the reason that it is something more than clams—processed material obtained from clams—and relies largely upon the decision of this court in *United States* v. *Sheldon & Co.*, 14 Cust. Appls. 228, T. D. 41708, to support this contention. The importer argues that "The enumeration of 'clams' in the plural is an indication that whole clams, identifiable as individuals, are intended, rather than the processed material obtained from clams."

In support of the Government's contention that the merchandise is dutiable as assessed, three arguments are made: First, that the case of *Alexander & Baldwin, Ltd.* v. *United States*, 21 C. C. P. A. (Customs) 558, T. D. 46988, is *stare decisis;* second, that the legislative history of the provisions under consideration indicates that it was the intent of Congress to make the merchandise at bar dutiable as assessed; third, that paragraph 721 (b) is an *eo nomine* provision, and is a more specific description of the merchandise involved than is said paragraph 1761.

The imported merchandise was entered and invoiced as "minced clams." Although cut into pieces, cleaned, and cooked, according to the testimony of the importers, it can be readily identified as parts of clams. Paragraph 721 (b) of the Tariff Act of 1930 provides for "Clams, clam juice, or either in combination with other substances, packed in air-tight containers." It will be observed that this language is not restricted to clams in their raw or natural state, nor is it restricted to entire clams. It includes any clams in any condition, so long as they are clams. "Where a dutiable provision names an article without terms of limitation all forms of the article are thereby included unless a contrary legislative intent otherwise appears." *Smillie* v. *United States*, 11 Ct. Cust. Appls. 199, 201, T. D. 38966. In *Tower & Sons* v. *United States*, 11 Ct. Cust. Appls. 157, 162, T. D.

38948, boiled down cider was held to come within the statutory designation "cider," as against "fruit juices" and "fruit syrups," the court saying, "when the term 'cider' was written into the provision without words of limitation it must be assumed that it was intended to include all kinds of cider."

To the same effect is *Schade* v. *United States*, 5 Ct. Cust. Appls. 465, T. D. 35002, where frozen wheat was involved.

It is apparent that this was the intention of the Congress in enacting this provision. We quote a portion of the report of the Ways and Means Committee of the House of Representatives, relative to H. R. 2667, now the Tariff Act of 1930. Report No. 7, 71st Cong., 1st sess., p. 74:

> Special provision is made for the caviar from sturgeon roe, which is the most expensive form of cavair, *and for canned clams*. The latter is a new industry of interest to both coasts of the United States. On the Atlantic coast the competition is from Canada and on the Pacific coast there exists a very important competition from Japan. The rates provided are intended to equalize the cost of production. (Italics ours.)

The mere mincing of the clams, or cleaning them, or cooking them, does not remove them from the designation of clams. The cases are plentiful in support of this proposition. In *Neuman & Schwiers Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 64, T. D. 33310, hams, with the bone extracted, and cooked and canned, were held to be hams, and not prepared or preserved meats. In *Brown & Co.* v. *United States*, 6 Ct. Cust. Appls. 415, T. D. 35977, soya beans, cooked and salted, and canned, were held to be not "something more than soya beans in the sense that they are something else." In that case the court further said, "That is to say, they are soya beans advanced in condition, but not so far advanced as to be converted into a new article." In that case the court cited many preceding cases, both in this court and in the Supreme Court of the United States, where the same principle obtained.

In *Mawer Co.* v. *United States*, 7 Ct. Cust. Appls. 493, T. D. 37108, olives, pitted, stuffed with pimentos, sterilized and soaked and canned, were held to come within the designation "olives," rather than within "edible fruits * * * prepared or preserved." In the recent case of *Alexander & Baldwin* v. *United States*, 21 C. C. P. A. (Customs) 558, T. D. 46988, the contest was between paragraphs 721 (b) and 1761, as in the case now before us. While the precise question here involved was not presented there, this court did say in its opinion:

> While it does not appear in the instant case whether the combination of clams and clam juice had undergone a process of cooking, that, in our opinion, as the issue has been here presented, is not material, and we regard this case and that involved in T. D. 46025 as being quite analogous.

The appellants contend that this case is controlled by another line of cases, exemplified by the pistache nuts case, *United States v. Sheldon & Co.*, 14 Ct. Cust. Appls. 228, T. D. 41708. In that case, pistache nuts, roasted and salted, were held by a majority of the court to be edible nuts, prepared or preserved, rather than under the designation "pistache nuts." However, that case did not rest upon the competition between pistache nuts and edible nuts, prepared or preserved, alone, but was based largely upon the fact that the Congress, in enacting the provision for edible nuts, had repeated the expression, "not specially provided for," in such a way as to compel the court to the conclusion that what the Congress had in mind was edible nuts, prepared or preserved, which had not been otherwise specially provided for, rather than as edible nuts which had not been specially provided for.

The appellants also cite two cases, *United States v. La Manna et al.*, 14 Ct. Cust. Appls. 123, T. D. 41647, and *United States v. Pacific Trading Co.*, 14 Ct. Cust. Appls. 131, T. D. 41649. There the competition was between a statutory provision for onions, and another for vegetables, pickled, or packed in salt, brine, oil, or prepared or preserved. In each of these latter cases, the decision rested largely upon the fact that onions had been uniformly in previous acts, and in the act then under consideration, dutiable by the bushel or pound, and it was thought by the court that this, together with a consideration of the legislative history, compelled the conclusion that only onions in their natural state were intended to be included in the *eo nomine* provision for onions. Hence, the onions involved in the cases there at bar, being pickled, were held to be more properly dutiable under the pickled or prepared vegetable provision. These cases were followed by *Budlong Pickle Co. v. United States*, 16 Ct. Cust. Appls. 174, T. D. 42808.

Other adjudged cases on the subject will be briefly commented upon.

*Breman v. United States*, 136 Fed. 743, wherein limes, in brine, were held by the court to be classifiable as "fruits in brine" rather than as "limes," is relied upon by appellant. An examination of that case shows that limes in brine were different in character and use from fresh limes; that there was a commercial designation distinguishing limes in brine from fresh limes, and a long established administrative practice distinguishing the same.

The case of *United States v. Reiss & Brady*, 136 Fed. 741, also relied upon, is one where commercial designation distinguished between "figs" and "fruits preserved." Lacomb, C. J., in disposing of the matter, was of the opinion that in trade and commerce the competing paragraphs described different articles.

*Stone & Co.* v. *United States*, 7 Ct. Cust. Appls. 173, T. D. 36492, involved currants, crushed and ground into a mass. These were held to be "fruits, * * * prepared," rather than as "currants." This case approaches closely the matter involved here, and is strongly relied upon. However, it will be noted that the court there said: "The importation has completely lost its identity as currants. It is an indeterminate mass or pulp. It is, in fact, a material prepared or made from currants, the ultimate use of which is in the manufacture of wines. Its general and more diversified uses as currants have thus been destroyed or limited."

No such facts appear here. So far as the record goes, the imported product before us is adaptable to exactly the same uses as would be whole clams.

*Malouf* v. *United States*, 1 Ct. Cust. Appls. 437, T. D. 31502, is cited. There a product made of wheat, ground and cooked, was held not to be within the designation "wheat," as it had ceased to be wheat and was entirely unsuitable for any wheat use.

The case of *Kwong Yuen Shing* v. *United States*, 1 Ct. Cust. Appls. 16, T. D. 30774, is brought to our attention. In that case, preserved duck meat, salted, pickled, dried in the sun and packed in tins, and sometimes packed in peanut oil, was held to be "meats prepared or preserved" rather than "poultry dressed." It appears from the opinion of the court that this holding rested upon proof of commercial designation. This further appears from reference to the opinion of this court in *United States* v. *General Hide & Skin Corp.*, 11 Ct. Cust. Appls. 78, T. D. 38731, where the decision in the *Kwong Yuen Shing* case, *supra*, is commented upon. In *United States* v. *General Hide & Skin Corp.*, *supra*, rabbit meat, cooked and canned, was, in the absence of commercial designation, held to be rabbits, and to come within the designation "game" rather than as "meats * * * prepared or preserved."

In this latter case, this court again reiterated its holding "that where an article is designated without words of limitation, that designation will generally include the article in all its forms known to commerce." To the same effect is *Shoellkopf, Hartford & MacLagan* v. *United States*, 71 Fed. 694, where the statutory term "paraffine," without limitations and without proof of commercial designation, was held to include all kinds of paraffine.

In *Smith* v. *United States*, 168 Fed. 462, meat of the quail, lark, and young chickens, prepared by cooking and packed in airtight cans for preservation, was held to be classifiable as "meats of all kinds, prepared or preserved," rather than as "poultry dressed." This case, also, went off on proof of the established meaning of the word "poultry."

The clear weight of the authorities on the subject is that an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article. Such is the situation here, and the trial court properly held the imported goods to be dutiable under said paragraph 721 (b).

It seems inconceivable that the Congress, in attempting to protect the clam industry in the United States, should intend to free list such clams if they were cut into pieces. In our opinion, no such conclusion is required. The imported goods are clams, and should be classified as such.

The judgment of the United States Customs Court is *affirmed.*

### DISSENTING OPINION

BLAND, Judge: I regret that I am unable to agree with the conclusion reached by the majority.

With reference to the applicability of the case of *Alexander & Baldwin, Ltd.* v. *United States,* 21 C. C. P. A. (Customs) 558, T. D. 46988, from which case the majority quotes, it is sufficient to say that there is nothing whatever in that case which would suggest the correctness of the conclusion of the majority in this case. Whole clams and clam juice were there involved, and the case turned upon a question wholly distinct from the questions involved in this case.

The majority opinion does not fully nor satisfactorily describe the merchandise involved here in particulars which are probably quite important. The opinion states "Although cut into pieces, cleaned, and cooked, according to the testimony of the importers it can be readily identified as parts of clams". The mincer not only cut the clams into small pieces, but in cutting and mincing the same into small pieces, a portion thereof was disintegrated to such an extent as to leave numerous, very minute, irregular-shaped particles evidently not taken into consideration by the majority. Moreover, the above statement may intend to convey the impression that from the appearance of the clam product at bar it may be said that the identity of the individual clams has not been destroyed, which is an important consideration according to certain decisions hereinafter referred to. Not only has the identity of the individual clams been destroyed by the mincing process, but it seems to me that it would be very difficult for anyone to determine, from a mere examination, whether the importation was even a clam product. It does have a very slight pinkish tint which is one of the characteristics of some clams. This also may be a characteristic of other shellfish meat. The juice, containing small crushed portions of the meat, is milky— so is the juice of oysters. The clam product at bar may have the flavor or odor of a clam. Surely it is not the intent of the majority

to suggest that the identity of an article is destroyed only when it has been so far processed that no one can determine what it has been. If this were true, it would be quite difficult to destroy the identity of some products such as peppers, onions, garlic, etc.

I again quote from the majority opinion:

* * * It will be observed that this language is not restricted to clams in their raw or natural state, nor is it restricted to entire clams. It includes any clams in any condition, so long as they are clams. "Where a dutiable provision names an article without terms of limitation all forms of the article are thereby included unless a contrary legislative intent otherwise appears."

Of course, to be clams, the identity of the clam in the can would have to be preserved. An examination of the decided cases on this subject discloses that in most instances cases similar to the one at bar have turned upon the proposition as to whether or not the identity of the prepared article had been lost.

In *Neuman & Schwiers Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 64, T. D. 33310, the identity of the ham involved was not destroyed and its name and character were not changed by the process which involved cooking and the removal of the bone. The shape of the canned ham is referred to in the opinion.

In *Brown & Co.* v. *United States*, 6 Ct. Cust. Appls. 415, T. D. 35977, soya beans, cooked and canned, but which had not been so processed as to "prevent their identification as soya beans" were held to be soya beans, and not beans, prepared or preserved. There the court had before it the whole bean. It was still a soya bean, cooked. In the instant case *no one can identify a clam in any quantity of the imported merchandise.* It is possible that one thoroughly familiar with canned clams could ascertain that the major portion of the canned material was made out of certain parts of clams, but no one contends that the clam, as such, can be identified.

No decided case called to our attention involved facts precisely on all fours with the facts in the case at bar, but certain of such cases are sufficiently identical in all respects to the instant case as to suggest, I think, the proper conclusion to be reached here.

In *United States* v. *Sheldon & Co.*, 14 Ct. Cust. Appls. 228, T. D. 41708, this court held roasted and salted pistache nuts to be dutiable as edible nuts, prepared or preserved, rather than under the designation "pistache nuts." The majority in the instant case seeks to distinguish that case from the case at bar by calling attention to the fact that the term "not specially provided for", and other similar terms, were used in the statute involved in the *Sheldon & Co.* case and that this situation compelled the court to the conclusion it reached. However this may be, I find the following in the opinion:

The pistache nuts involved herein have been salted and roasted, and as they are either prepared or preserved or both, and as they in such condition are not specially provided for elsewhere, they are therefore provided for in paragraph 759.

If the consideration suggested by the majority was the controlling one in that case, and if the ruling in that case is to be regarded as applicable to the case at bar, then the term "not specially provided for" in paragraph 1761 should not be overlooked. The views of both the majority and the minority in the pistache nut case are counter to those of the majority in this case. If it had been held in that case that the salted, roasted pistache nuts were "pistache nuts", it would have been on account of the fact that the whole nut, shell and all, was under consideration, and the identity of the pistache nut had not been destroyed (see dissenting opinion).

In *United States* v. *La Manna, Azema & Farnan et al.*, 14 Ct. Cust. Appls. 123, T. D. 41647, the competing provisions were "onions, 1 cent per pound; * * *" and "vegetables * * * prepared or preserved * * *." The small onions which had been peeled, were placed in sealed bottles containing white vinegar. One of the reasons whichbrought the court to the conclusion that the importation was not "onions" was the fact that prior to the act there under consideration, onions had been made dutiable by the *bushel*, and that in the Summary of Tariff Information it was shown that the change from the bushel to the pound in the Tariff Act of 1922 was with relation to the same kind of articles as had been dutiable by the bushel in prior acts. The mere fact that onions were provided for by the pound in the Tariff Act of 1922, if the bushel provision in prior acts had been left out of consideration, would not have been controlling of our decision there. (See *Neuman & Schwiers Co. et al.* v. *United States, supra,* where hams were dutiable by the pound.) The decision also rested upon another ground, which is not referred to by the majority, which ground is quite pertinent to a consideration of the case at bar. We there discussed certain authorities and said:

In the case at bar, the merchandise is more than onions in one sense and less than onions in another. It is a new article of commerce made from onions which have been peeled, cut, and soaked in a pickling solution.

Probably the nearest case to the one at bar which has been called to our attention is *Stone & Co.* v. *United States,* 7 Ct. Cust. Appls. 173, T. D. 36492, which involved currants crushed and ground. These were held to be fruits prepared in any manner, upon the theory that the importation had "completely lost its identity as currants" and that it was a material prepared or made from currants, and that its general and more diversified uses as currants had been destroyed or limited. In the instant case it is obvious (although the majority states otherwise) that the use of the clams from which the importation was produced has been very much limited by the processes they have undergone. It is common knowledge that people eat fried clams and clams on the half-shell. The product at bar could not be so utilized. In the instant case it is suggested that the contents of the

cans are *all clams*. In the currant case the cans contained, in the same sense, *all currants*. The clams at bar would be "all clams", in the same sense, if they had been completely ground.

The majority cites *United States* v. *General Hide & Skin Corp.*, 11 Ct. Cust. Appls. 78, T. D. 38731, involving rabbit meat which had been cooked and canned, and it was there held that the importation was "game" rather than "meats * * * prepared or preserved". It is sufficient to point out the inapplicability of that case by calling attention to the fact that it was not there held that the importation consisted of *rabbits*. That case turned on the special meaning to be given the term "game". No such question about the meaning of the word "clams" is here involved.

In the opinion of the majority in the instant case we find the following, which, in my judgment, should be limited so as not to convey the impression which it clearly does, in view of the particular merchandise at bar:

The clear weight of the authorities on the subject is that an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article * * *.

It may be said that there are pastes made by adding water to powdered vegetable matter. Everything in such a paste, except the water, came from the vegetable, and all the vegetable went in it, and yet we would not hold it to be dutiable as such vegetable *eo nomine* provided for, if there were a provision for vegetables prepared or preserved. It is true that the *eo nomine* provision for an article will ordinarily include all forms of that article, if it still remains that particular article, but if its identity has been destroyed, and if by processing it has become a new article, it of course cannot be included in the *eo nomine* provision.

The legislative history in this case suggests that the majority has arrived at an erroneous conclusion. A portion of the legislative history is referred to in the majority opinion but, in my judgment, the most significant phase of the same has been omitted. Parties representing the clam industry, chiefly in the Northwest, appeared before the Committee on Ways and Means of the House of Representatives, which prepared the provisions under consideration, and asked for a tariff on *canned clams and products thereof*, and they particularly pointed out that they did not ask for any duty on other shellfish except "clams and their products". The notes made on the committee print of the bill show that the articles provided for in paragraph 721 (b) had been taken from the free list provision (shellfish, etc.). It is obvious that the industry involved wanted to take out of the free list shellfish provision *clams and clam products*. Congress did not grant it that request but provided for clams and clam juice, and left clam products on the free list.

It seems to me that the decision of the majority will make the application of provisions for prepared and preserved articles, such as vegetables, fish, provisions, etc., a very difficult one in the future. Ordinarily, in tariff schedules relating to food products, provision is made for an article *eo nomine* and the *eo nomine* provision may be followed by words describing its condition, and then a "prepared or preserved" provision is made to broadly include such article when, on account of processing, it is removed from the *eo nomine* status. For some reason Congress did not follow this precedent in relation to clams, and to a number of other articles found in the tariff act, and it is concerning the latter that I now wish to draw attention.

Paragraph 746, Tariff Act of 1930, provides for *mangoes* at 15 cents per pound. Let us suppose that mangoes have been peeled, cut up into particles, cooked and canned. Under the decision of the majority, they would be dutiable under the *eo nomine* provision for mangoes if anyone could tell that the product in the can was made from mangoes, notwithstanding the fact that Congress, in paragraph 752, made dutiable at 35 per centum ad valorem fruits, when prepared or preserved. The same situation would pervail as to avocado pears and possibly a great many other articles on the dutiable list.

Let us also examine the free list. We find there "bananas and plantains, green or ripe." It is well known that plantains, which resemble bananas, are sometimes cooked while in a somewhat green state. Under the decision of the majority, the fruit plantain, if sliced, canned and cooked, and imported into this country, would not bear a rate of duty of 35 per centum ad valorem as fruits, prepared or preserved (and thus encourage the canning industry of this country), but would be relegated to the free list. The free list also contains provision without limitation for brazilian or pichurim beans (par. 1635); tagua nuts (par. 1778); tamarinds (par. 1779); and locust or carib beans, and pods and seeds thereof (par. 1782). It is our fear that the holding of the majority may lead us far afield in the classification of articles which are provided for in language like that employed in the instances suggested.

The majority opinion points out the incongruity of Congress intending the merchandise at bar being free of duty if it intended to protect the clam industry. If Congress had intended to include clam products in the dutiable paragraph, it could easily have done so by the use of appropriate language, and the fact that full protection may not be given to the clam industry as suggested, should not be a controlling consideration in this case. If the legislative history is suggestive of what Congress intended, it comes nearer suggesting the intent to leave clam products on the free list than it does to include them under the *eo nomine* provision for clams. The fact that the clam industry in this country would have no protection on its clam

products is not a matter with which we can concern ourselves. This is a matter strictly within the prerogatives of the legislative branch of our Government, and it may have had good reasons, and reasons wholly consistent with the tariff act as a whole, for leaving clam products on the free list.

Let us suppose that the tariff provision before us was as follows:

721. (b) Clams, 10 per centum ad valorem; * * * shellfish, prepared or preserved, not specially provided for, 35 per centum ad valorem.

Is it conceivable that under such a provision the very much proc-essed clam product at bar would not be held dutiable as shellfish, prepared, especially in view of the legislative history above suggested?

I do not mean to suggest that it is my view that clams which have been cooked and washed and salted, without destroying the identity of the individual clams, would not be dutiable under said paragraph 721(b). On the contrary, it is my view that they would be so dutiable, but in the case at bar the processing of the clams completely destroyed their identity, and to bring the product before us under said paragraph we would be compelled to read into it the words "prepared or preserved" which Congress presumably intentionally omitted therefrom, but did provide for with respect to shellfish under paragraph 1761.

On account of the above considerations, I am of the opinion that the protest of the importer should have been sustained and the judgment of the trial court should be reversed.

LENROOT, J., concurs in the above dissent.