COMMERCIAL ALUMINUM
COOKWARE COMPANY,
Plaintiff,

v.

UNITED STATES, Defendant.

Slip Op. 96–135.
Court No. 94–01–00071.

United States Court of
International Trade.

Aug. 13, 1996.

O'Donnell, Byrne & Williams (Michael A. Johnson), R. Kevin Williams, of counsel, Washington, DC, for plaintiff.

Frank W. Hunger, Assistant Attorney General of the United States; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, (Amy M. Rubin), Laura Siegal, Attorney, Office of the Assistant Chief Counsel, United States Customs Service, of counsel, Washington, DC, for defendant.

**OPINION**

CARMAN, Judge:

Plaintiff, Commercial Aluminum Cookware Company, commenced this action to challenge the United States Customs Service (Customs) classification and liquidation of certain merchandise plaintiff imported from Japan. Customs cross-moves for summary judgment requesting the Court deny plaintiff's motion and dismiss the action. The Court granted plaintiff's motion to designate this action a test case pursuant to U.S. CIT R. 84(b) and entered an order to that effect on April 25, 1995. This Court has jurisdiction under 28 U.S.C. § 1581(a) (1988) and this action is before the Court for *de novo* review under 28 U.S.C. § 2640(a)(1) (1988).

For the reasons which follow, the Court enters judgment for plaintiff.

**BACKGROUND**

### A. *The Merchandise*

The merchandise at issue consists of unfinished circular glass lids with stainless steel rims attached and two holes drilled through the top of each lid. (Stipulation of Material Facts as to Which There Is No Genuine Issue to Be Tried (Stip.) ¶ 4.) The unfinished glass lids are made of specially tempered glass, not glass ceramics, and range in size from 16 to 32 cm in diameter. (*Id.* ¶¶ 9, 6.) The lids were manufactured in Japan on automatic machinery and imported in January 1993 separate from any pots or pans or other articles that the lids could be used to cover. (*Id.* ¶¶ 5, 7.) After importation, plaintiff finished the glass lids by attaching stainless steel loop handles though the holes in the top of each lid using rivets and washers. (*Id.* ¶ 8.) The sole use of the finished glass lids is to close and cover cooking vessels. (*Id.* at ¶ 14.) The finished glass lids are marketed and sold exclusively as lids for cooking vessels in plaintiff's Professional Non–Stick line of "Calphalon" cooking vessels. (*Id.* ¶ 11.) The finished glass lids and the cooking vessels with and for which they are sold are principally used in kitchens. (*Id.* ¶ 12.) The glass lids are not used commercially for the conveyance and packaging of liquids or solid products. (*Id.* ¶ 15.)

### B. *Statutory Provisions*

Plaintiff relies on the following provisions of the Harmonized Tariff Schedules of the United States (HTSUS): [1]

7010 Carboys, bottles, flasks, jars, pots, vials, ampoules and other containers, of glass, of a kind used for the conveyance or packing of goods; preserving jars of glass; stoppers, lids and other closures, of glass:

. . . .

7010.90 Other:

. . . .

Closures imported separately; containers (with or without their closures) of a kind

1. The HTSUS provisions cited by the Court appear in HTSUS (5th ed. 1993 & Supp. 1).

used for the conveyance or packing of perfume or other toilet preparations; other containers if fitted with or designed for use with ground glass stoppers:

7010.90.20 Produced by automatic machine ...... 3.7%

Defendant relies on the following HTSUS provision:

7013 Glassware of a kind used for table, kitchen, toilet, office, indoor decoration or similar purposes (other than that of heading 7010 or 7018):

. . . .

Glassware of a kind used for table (other than drinking glasses) or kitchen purposes other than that of glass-ceramics:

. . . .

7013.39 Other:

7013.39.10 Pressed and toughened (specially tempered) ..................... 12.5%

## C. Customs Service Classification

Customs classified the subject merchandise under subheading 7013.39.10, HTSUS. Pursuant to this subheading, Customs imposed duties totaling 12.5% *ad valorem.* Plaintiff filed timely protests to contest Customs' classification. Customs subsequently denied plaintiff's protests. After having paid all liquidated duties, plaintiff timely commenced this action.

CONTENTIONS OF THE PARTIES

### A. Plaintiff

Plaintiff alleges the subject merchandise is provided for *eo nomine* in Heading 7010, HTSUS, and specifically under subheading 7010.90.20, HTSUS.[2] Heading 7010, HTSUS, covers three classes of merchandise, plaintiff argues, which are distinct and independent of one another. Plaintiff asserts the three classes in the heading are set forth as separate nominal clauses and are separated

by semicolons: "(1) carboys, bottles, flasks, jars, pots, vials, ampoules and other containers, of glass, of a kind use [sic] for the conveyance or packing of goods; (2) preserving jars of glass; (3) stoppers, lids and other closures, of glass." (Pl.'s Br. at 10.) Plaintiff claims the use of semicolons to separate classes of merchandise in a heading "is a very old device in tariff law," (*id.* at 11), and plaintiff discusses two cases to demonstrate this point, (*id.* at 11–14 (discussing *J.S. Staedtler, Inc. v. United States,* 2 Cust.Ct. 484, C.D. 183 (1939)); *United States v. Palm, Fechteler & Co.,* 4 Ct.Cust.App. 1 (1913)). Additionally, plaintiff reasons, the repetition of the phrase "of glass" is "a precaution which would be unnecessary if it were intended that one read across the semi-colons and attribute qualities of one class to the others," thereby indicating that each description comprises a separate class of merchandise. (*Id.* at 12.)

Turning to subheading 7010.90.20, HTSUS, plaintiff argues that like Heading 7010, HTSUS, the subheading consists of three classes of imported merchandise separated by semicolons: "(1) Closures imported separately; (2) Containers (with or without their closures) of a kind used for the conveyance or packing of perfume or other toilet preparations; (3) Other containers if fitted with or designed for use with ground glass stoppers." (*Id.* at 14–15.) Plaintiff cites the dictionary definition of "closure" and argues the common meaning of "closure" embraces "lid." The subject merchandise consists of "lids," plaintiff argues, as evident from the stipulation and an examination of the samples submitted to the Court. Because "lids" are clearly embraced *eo nomine* within "[c]losures imported separately" of subheading 7010.90.20, HTSUS, plaintiff reasons, and because there are no express limitations—other than that the closures be "of glass" and imported separate from the vessels they

2. Plaintiff explains it does not discuss Customs' classification of the subject merchandise under subheading 7013.39.10, HTSUS, because if plaintiff's claimed classification under Heading 7010, HTSUS, prevails, the merchandise cannot be classified under Heading 7013, HTSUS, as that heading "covers glassware '(*other than that of heading 7010 or 7018*).'" (Mem. in Support of Pl.'s Mot. for Summ.J. (Pl.'s Br.) at 6 (quoting Heading 7013, HTSUS) (emphasis added by plaintiff).)

close—the subject merchandise is classifiable under subheading 7010.90.20, HTSUS.

Finally, plaintiff points to the Customs Co-Operation Council's *Harmonized Commodity Description and Coding System Explanatory Notes (Explanatory Notes)* [3] to argue the *Explanatory Notes* support plaintiff's construction of the tariff provision. According to plaintiff, "[t]he *Explanatory Notes* make clear that three classes of merchandise are encompassed by the heading [7010, HTSUS]: (1) all glass containers used commercially for the conveyance and packing of goods; (2) preserving jars of glass; (3) stoppers and other closures, of glass." (*Id.* at 21.)

### B. *Defendant*

Defendant responds that because the subject merchandise is used exclusively to cover cooking pots and not for containers used for the conveyance or packing of goods, plaintiff's proposed classification under subheading 7010.90.20, HTSUS, must fail. Defendant argues a review of the terms of Heading 7010, HTSUS, "reveals that it contains words for particular types of containers such as carboys, bottles, jars, ampoules, etc., followed by the general, functionally descriptive, terms 'stoppers, lids and other closures, of glass.'" (Def.'s Br. in Support of Cross-Mot. for Summ.J. & in Opp'n to Pl.'s Mot. for Summ.J. (Def.'s Br.) at 7–8.) Where particular words are followed by general terms, defendant reasons, "the interpretive doctrine of *ejusdem generis* ... controls the classification of goods within the heading in question." (*Id.* at 8.) Because Heading 7010, HTSUS, contains particular and highly descriptive words such as carboys, bottles, jars, and ampoules followed by the general terms "'stoppers, lids and other closures, of glass,'" defendant concludes, "this heading

must be construed according to the doctrine of *ejusdem generis.*" (*Id.*)

Application of *ejusdem generis,* defendant argues, makes it clear the subject merchandise is not covered by Heading 7010, HTSUS, because the imported lids do not share the essential characteristic that unite the items named in the heading. That essential characteristic, according to defendant, is that "each is a type of container commonly used for the conveyance or packing of goods." (*Id.*) Defendant points out that "the glass lids at issue do not share this essential characteristic nor are they used to cover containers which possess such a trait." (*Id.*) [4]

Defendant rejects plaintiff's contention that the semicolon preceding the words "stoppers, lids and other closures, of glass" in heading 7010, HTSUS, indicates a distinct category of merchandise. To the contrary, defendant points out, there are cases where the use of semicolons in tariff statutes did not indicate separate and distinct classes of merchandise. Finally, defendant disputes plaintiff's interpretation of the *Explanatory Notes* and contends its own reading of the *Explanatory Notes* "fully support[s] defendant's position that because the glass lids have no relationship to containers used for the commercial conveyance of goods, they are not excluded from heading 7013 and they are not included in heading 7010." (*Id.* at 15.)

### DISCUSSION

#### I.

Plaintiff claims defendant has misconstrued the effect of the presumption of correctness in this case:

Defendant ... states that plaintiff has only made passing reference to the Customs Service's ruling in this matter, as if Cus-

---

**3.** "The Explanatory Notes constitute the Customs Cooperation Council's official interpretation of the Harmonized System." H.R.Conf.Rep. No. 576, 100th Cong., 2d Sess. 549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582.

**4.** Defendant also argues *Group Italglass U.S.A., Inc. v. United States,* 17 CIT 226, 1993 WL 97624, *reconsideration granted in part,* 17 CIT 373, 1993 WL 177590, *petition for permission to appeal denied,* 9 F.3d 977 (Fed.Cir.1993), deter-

mined that a prerequisite for classification under Heading 7010, HTSUS, is that the principal use of imported merchandise be the commercial conveyance or packing of goods. (Def.'s Br. at 10 (footnote omitted).) Because the subject merchandise is designed for use by consumers to cover cooking pots and not to cover glass containers used commercially in the conveyance of goods, defendant reasons, plaintiff's claim must fail. (*Id.* at 10–11.)

toms view of the law were presumed to be correct. Customs interpretation of the law is not presumed to be correct in a classification case.... The Court is conducting *de novo* review in this case. It is not bound by the facts found by Customs, although they are presumed to be correct. More important, the Court is not bound by Customs' interpretation of the statute. Determination of whether merchandise falls within a tariff provision is a question of law and is resolved by the Court without deference to Customs' construction, unless specifically adopted by Congress (not a fact in this action).

(Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Summ.J. & Resp. to Def.'s Cross–Mot. for Summ.J. at 5–6.) Defendant replies it does not claim the Court is bound by Customs' classification decision.

The Government recognizes that, although Customs' decisions enjoy a presumption of correctness, the Court's duty in reviewing classification determinations "is to find the *correct* result...." Implicit in this function is the Court's responsibility to exercise its own judgment regarding the proper classification of the merchandise under review. Furthermore, the Government's initial brief contains no claim that, in this case, Customs' construction of the law is entitled to deference. Presumption of correctness is a different concept than deference and plaintiff should not presume to use them interchangeably.

(Def.'s Reply to Pl.'s Br. in Opp'n to Def.'s Cross–Mot. for Summ.J. at 8–9 (citations omitted).)

■ The parties' dispute as to the meaning of the presumption of correctness and recent opinions of the Court of Appeals for the Federal Circuit (Federal Circuit) and the CIT construing the scope of the presumption of correctness prompt this Court to closely examine the role of the presumption of correctness in this case. The starting point is the statute providing for the presumption of correctness.

§ 2639. Burden of proof; evidence of value

(a)(1) Except as provided in paragraph (2) of this subsection, in any civil action commenced in the Court of International Trade under section 515, 516, or 516A of the Tariff Act of 1930, *the decision of the Secretary of the Treasury, the administering authority, or the International Trade Commission is presumed to be correct.* The burden of proving otherwise shall rest upon the party challenging such decision.

28 U.S.C. § 2639(a)(1) (1988) (emphasis added).

In *Goodman Mfg., L.P. v. United States,* 69 F.3d 505 (Fed.Cir.1995), the Federal Circuit reviewed the CIT's grant of the government's cross-motion for summary judgment in an action construing the allowance for recoverable waste under the Foreign Trade Zones Act. In discussing the applicable standard of review, the Federal Circuit stated, "[b]ecause there was no factual dispute between the parties, the presumption of correctness is not relevant." *Goodman,* 69 F.3d at 508.[5] This statement appears to limit the presumption solely to the factual basis of the decision. The statute, however, does not restrict the presumption in this way. Furthermore, case law indicates the presumption applies to more than the facts supporting the decision. Thus, it is not clear to this Court whether the Federal Circuit in *Goodman* intended to modify the practice of applying the presumption of correctness to Customs *decisions* and not merely findings of fact. As discussed below, it seems evident that *decisions* embrace more than findings of fact.

Over 100 years ago, the Supreme Court explained the rationale for a presumption of correctness attaching to the decisions of the

5. Several subsequent opinions of the CIT appear to have adopted this aspect of *Goodman. See Central Prods. Co. v. United States,* 936 F.Supp. 1002, ——— (1996); *Haggar Apparel Co. v. United States,* 938 F.Supp. 868, —— (CIT July 12, 1996); *Sharp Microelecs. Technology, Inc. v. United States,* 932 F.Supp. 1499, 1501–02 (CIT 1996); *GKD–USA, Inc. v. United States,* 931 F.Supp. 875, 878 (CIT 1996); *Celestaire, Inc. v. United States,* 928 F.Supp. 1174, 1176 (CIT 1996); and *Marcor Dev. Corp. v. United States,* 926 F.Supp. 1124, 1128 (CIT 1996).

Secretary of Treasury and the customs collection agent as follows:

> These officers are, however, selected by law for the express purpose of deciding these questions: they are appointed and required to pronounce a judgment in each case; and the conduct, management, and operation of the revenue system seem to require that their *decisions* should carry with them the presumption of correctness. This rule is not only wise and prudent, but is in accordance with the general principle of law, that an officer acting in the discharge of his duty, upon the subject over which jurisdiction is given to him, is presumed to have acted rightly.

*Arthur v. Unkart*, 96 U.S. 118, 122, 24 L.Ed. 768 (1877) (emphasis added). The Supreme Court's directive that a presumption attaches to the "decisions" of the Customs officials is repeated in a long line of customs cases. The "actual classification and assessment of duty are the legal functions of the collector. These acts are his decisions and to them attaches the legal presumption of correctness. This is elemental in customs law and requires no citation of authorities." *Bonwit Teller & Co. v. United States*, 19 C.C.P.A. 348, 350–51, T.D. 45500, 1932 WL 2206 (1932); *see also St. Paul Fire & Marine Ins. Co. v. United States*, 6 F.3d 763, 768 (Fed. Cir.1993) ("[W]e must accept the fact that Congress has directed the [CIT] to presume that Customs' decisions are correct and that it is [plaintiff's] burden to prove otherwise.") (citing 28 U.S.C. § 2639(a)(1) (1988)).

Case law consistently describes the presumption as applying to the "ultimate conclusion" of the Customs official as well as the "subsidiary facts" of the decision. *See United States v. New York Merchandise Co.*, 58 C.C.P.A. 53, 58, 435 F.2d 1315, 1318 (1970)

("The presumption of correctness therefore attaches not only to the ultimate conclusion of the Collector that the goods are properly classified in a particular category, but also to every subsidiary fact necessary to support that conclusion."), *cited in S.I. Stud, Inc. v. United States*, 17 CIT 661, 663, 1993 WL 261419 (1993), *aff'd*, 24 F.3d 1394 (Fed.Cir. 1994); *Schott Optical Glass, Inc. v. United States*, 82 Cust.Ct. 11, 15, 468 F.Supp. 1318, 1320 (Re, C.J.) ("The presumption of correctness pertains not only to the ultimate conclusion of the classifying official, but also to every subsidiary fact necessary to support that conclusion.") (citation omitted), *aff'd*, 67 C.C.P.A. 32, 612 F.2d 1283 (1979); *Dollar Trading Corp. v. United States*, 67 Cust.Ct. 308, 316, 349 F.Supp. 1395, 1400 (1971) ("The presumption attaches to every subsidiary fact necessary to support [the collector's] ultimate conclusion that the goods were classifiable under that particular category.") (citation omitted).[6]

■■■■ In light of the foregoing, the Court will examine whether plaintiff in this case has overcome the statutory presumption of correctness that attaches to Customs' decision, including the subsidiary facts and the ultimate conclusion contained therein. Plaintiff must overcome the presumption by a preponderance of the evidence. *St. Paul Fire & Marine Inc. Co.*, 6 F.3d at 769. Where as here there are no material facts in dispute and only questions of law remain—for example, Customs' interpretation of a tariff provision—plaintiff must show legal error to overcome the presumption of correctness. *See Mita Copystar Am. v. United States*, 21 F.3d 1079, 1084 (Fed.Cir.1994) ("[A]bsent a showing of legal error in the construction of a tariff term, we, like the trial court, should

---

**6.** In practice, Customs' classification decision is based in part on the actions of an import specialist at Customs, who is assigned particular lines of merchandise in which he or she becomes an expert. Ruth F. Sturm, *Customs Law & Administration* § 7.2 at 31 (Supp.1996). In classifying merchandise, the import specialist "gathers information from examination of the merchandise, the explanatory information in the Tariff Classification Study, [Customs Information Exchange] circulars, the Customs Bulletin, and other Government publications." *Id.* The import specialist also learns about the line of merchandise

from trade organizations and through practical experience in dealing with regular importations of the merchandise, and becomes familiar with the laws and regulations applicable to that line. In the end, "[t]he proper classification of merchandise may involve questions of law, such as the construction of the pertinent tariff provisions and their application to the imported merchandise, and questions of fact, such as what the merchandise actually is, its component material of chief value, its chief use, how it is dealt in trade." *Id.* § 50.1 at 3 (Supp.1995).

uphold a Customs' classification decision."); *Marubeni Am. Corp. v. United States,* 915 F.Supp. 413, 419 (CIT 1996) ("Absent a showing of legal error in the construction of the [tariff term], Customs' classification decision must be upheld.") (citing *Mita Copystar*). If the Court finds because of evidence or other authority presented by plaintiff that the presumption has been overcome, the Court must reach the correct classification on its own or after remand to the agency. *See Jarvis Clark Co. v. United States,* 2 Fed.Cir. (T) 70, 74–75, 733 F.2d 873, 878, *petition for reh'g denied,* 2 Fed.Cir. (T) 97, 739 F.2d 628 (1984).

■ Although "[i]n some cases, the government's classification may be so patently incorrect that the importer can overcome the presumption of correctness without producing a more satisfactory alternative," *Jarvis Clark Co.,* 2 Fed.Cir. (T) at 75, 733 F.2d at 878, "[t]he best proof that a customs classification is wrong is proof that a different classification is right, or at least preferable," *Jarvis Clark Co.,* 2 Fed.Cir. (T) at 99, 739 F.2d at 630.

## II.

This case is before the Court on motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." U.S. CIT R. 56(d). The parties' stipulation defines the goods at issue. This case does not present any genuine issue of material fact. The two issues that remain are: (1) whether plaintiff has overcome the presumption of correctness attaching to Customs' classification of the subject merchandise, under subheading 7013.39.10, HTSUS, covering

"Glassware of a kind used for table, kitchen, ... other than that of glass-ceramics ... Pressed and toughened (specially tempered)," dutiable at the rate of 12.5% *ad valorem;* and (2) whether the imported merchandise is dutiable under subheading 7010.90.20, HTSUS, covering "stoppers, lids and other closures, of glass ... Closures imported separately ... Produced by automatic machine," dutiable at the rate of 3.7% *ad valorem,* as claimed by plaintiff.

■ It is arguable the subject merchandise is covered under subheading 7013.39.10, HTSUS, as "Glassware of a kind used for table, kitchen, ... other than that of glass-ceramics ... Pressed and toughened (specially tempered)," as classified by Customs.[7] However, if the subject merchandise is properly classifiable under heading 7010, HTSUS, as claimed by plaintiff, then Customs' classification must yield as heading 7013, HTSUS, covers certain glassware "(other than that of heading 7010 or 7018)." Therefore, plaintiff overcomes the presumption of correctness attaching to Customs' classification under subheading 7013.39.10, HTSUS, simply by establishing that the subject merchandise is properly classifiable under Heading 7010, HTSUS. *See Group Italglass,* 17 CIT at 227, 1993 WL 97624.

■ The crux of the dispute here is whether each listing of items in Heading 7010, HTSUS, separated by semicolons, constitutes a separate class of merchandise. Plaintiff contends they do and defendant argues otherwise. The Court finds plaintiff has the better argument for the following reasons. First and foremost, the plain language of the tariff provision dictates this result. The first group of merchandise listed in Heading 7010, HTSUS, is "Carboys, bottles, flasks, jars, pots, vials, ampoules and other containers, of glass, of a kind used for

---

7. In construing tariff terms, "the court may rely upon its own understanding, dictionaries and other reliable sources." *Medline Indus., Inc. v. United States,* 62 F.3d 1407, 1409 (Fed.Cir.1995) (citing *Marubeni Am. Corp. v. United States,* 35 F.3d 530 (Fed.Cir.1994)). "Glassware" is defined as "articles made of glass." *Webster's Third New International Dictionary* 963 (1986). The parties agree "[g]lass imparts the essential characteristic to the imported merchandise,"

(Stip. ¶ 10), and therefore the merchandise could be properly defined as an "article of glass" and within the definition of "glassware." The parties agree the imported merchandise is "made of specially tempered glass, but not of glass ceramics," (*id.* ¶ 9), and when finished, is "principally used in kitchens," (*id.* ¶ 12). Accordingly, a plausible argument could be made the subject merchandise falls within subheading 7013.39.10, HTSUS.

the conveyance or packing of goods." This class does have qualifying language in that not *all* carboys, bottles, flasks, etc., are covered by the heading, but only those "of glass" and "of a kind used for the conveyance or packing of goods." A plain reading of the heading reveals these limitations only apply to those items that precede the qualifying language. The second group of merchandise, "preserving jars of glass," is also qualified in that only glass preserving jars are covered. There is no language in the statutory provision dictating that the "preserving jars of glass" be limited to those "preserving jars of glass" that are "of a kind used for the conveyance or packing of goods." The only qualification is that the jars be "of glass." The third group of merchandise, "stoppers, lids and other closures, of glass" is limited only in the sense that the "stoppers, lids and other closures" must be of glass to be covered. There is no language directing that the "stoppers, lids and other closures" be "of a kind used for the conveyance or packing of goods." If the drafters of the tariff provision meant for the qualifying language in the first class of merchandise to be read throughout the heading, they were perfectly capable of including such language at the end of the heading as is commonly done in other tariff provisions.[8] Furthermore, if the qualifying language in the first class of merchandise was intended to be read into the other two classes, there would have been no need to repeat "of glass" in each of the subsequent classes. The Court presumes all statutory language serves a purpose, *see Bailey v. United States*, — U.S. —, — — —, 116 S.Ct. 501, 506–07, 133 L.Ed.2d 472 (1995) (" 'Judges should hesitate ... to treat [as surplusage] statutory terms in any setting....' ") (bracketed text in original) (citation omitted); *Application of Barker*, 559

F.2d 588, 591–92 (C.C.P.A.1977), *cert. denied*, 434 U.S. 1064, 98 S.Ct. 1238, 55 L.Ed.2d 764 (1978) ("As a principle of statutory construction, it is presumed that Congress did not use superfluous words.") (footnote citing cases omitted), and therefore, the Court finds this repetition of some significance.

Second, the semicolons dividing the classes of merchandise in Heading 7010, HTSUS, create a wall around each grouping of items preventing the qualifying language from one grouping from applying to another. This use of semicolons is consistent with grammatical rules on the principal use of the semicolon— to separate *independent* clauses of a sentence.[9] In light of the foregoing, the Court finds the tariff provision describes three classes of merchandise in Heading 7010, HTSUS, and the qualifying language of one class does not apply to the merchandise listed in the other classes in the heading.

▮▮ The provision for "stoppers, lids" in Heading 7010, HTSUS, is an *eo nomine* designation, "which describes a commodity by a specific name, usually one well known to commerce." *See* Sturm § 53.2 at 3 (Supp. 1995) (citing *United States v. Bruckmann*, 65 C.C.P.A. 90, 582 F.2d 622 (1978)). "[I]t is basic that if merchandise is specified *eo nomine*, the *eo nomine* provision prevails over one that is general or less specific." *Economy Cover Corp. v. United States*, 76 Cust.Ct. 130, 134, C.D. 4645, 411 F.Supp. 783 (1976). In their stipulation of material facts, the parties repeatedly refer to the imported merchandise as "unfinished glass lids," (*see* Stip. ¶¶ 7–9), or as "glass lids," (*see id.* ¶¶ 5, 6). The predecessor court to the Federal Circuit stated over 60 years ago:

The clear weight of the authorities on the subject is that an *eo nomine* statutory

---

8. For example, 3924.90.10, HTSUS, provides for "Curtains and drapes, including panels and valances; napkins, table covers, ... slipcovers; *and like furnishings.*" (Emphasis added.) Although the two classes of merchandise in the subheading are separated by semicolons, it is clear the underscored language is meant to apply across both classes of merchandise.

9. *See The Chicago Manual of Style* ¶ 5.89 (14th ed. 1993) (A semicolon "should always be used between the two parts of a compound sentence

(independent, or coordinate, clauses) when they are not connected by a conjunction....."); Edward D. Johnson, *The Handbook of Good English* § 2–11 at 121 (1991) ("The semicolon has two main uses: to separate independent parts of a sentence, and to separate elements of a series when some of the elements already contain commas."); *Webster's* ¶ 5.1.3 at 47a ("As a strong comma a semicolon usually separates phrases or clauses that are themselves broken up by punctuation.....").

designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article.

*Nootka Packing Co. v. United States,* 22 C.C.P.A. 464, 470, T.D. 47464, 1935 WL 2283 (1935) (*cited in The Brechteen Co. v. United States,* 6 Fed.Cir. (T) 154, 158, 854 F.2d 1301, 1304 (1988)); *see also Lynteq, Inc. v. United States,* 976 F.2d 693, 697 (Fed.Cir.1992) ("Tariff terms contained in the statutory language 'are to be construed in accordance with their common and popular meaning, in the absence of contrary legislative intent.'") (citation omitted). The Court finds there are no limitations or contrary legislative intent excluding the imported merchandise from the *eo nomine* designation in Heading 7010, HTSUS. Accordingly, the Court holds the subject merchandise is *eo nomine* within the class of merchandise designated as "stoppers, lids and other closures, of glass" in Heading 7010, HTSUS.[10]

■ Turning to subheading 7010.90.20, HTSUS, claimed by plaintiff, the Court finds the subject merchandise is covered by the subheading, which provides for "Closures imported separately ... Produced by automatic machine." The parties agree the subject merchandise was imported separately, (Stip. ¶ 7), and was produced by automatic machine, (*id.* ¶ 5). There is little doubt the imported lids are "closures" as that term is used in the tariff provision. The common meaning of "closures" encompasses the imported merchandise. *See Webster's* at 428[5a] (defining "closure" in part as "a means of filling a space or gap [especially] by sealing it or of closing an opening ... a cap, lid, or other form of stopper on or in a container [especially] for sealing it"). As

"[t]ariff terms are construed according to their common and commercial meanings," *Simod Am. Corp. v. United States,* 7 Fed.Cir. (T) 82, 86, 872 F.2d 1572, 1576 (1989), the Court finds the subject merchandise are "closures" as that term is used in the tariff provision. In conclusion, the Court holds the subject merchandise is properly classified under subheading 7010.90.20, HTSUS, covering "stoppers, lids and other closures, of glass ... Closures imported separately ... Produced by automatic machine," dutiable at the rate of 3.7% *ad valorem.*

## CONCLUSION

Plaintiff has overcome the presumption of correctness attached to Customs' classification of the subject merchandise under subheading 7013.39.10, HTSUS. The subject merchandise is properly classifiable under subheading 7010.90.20, HTSUS.

## JUDGMENT

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision it is hereby

**ORDERED** plaintiff's motion for summary judgment is granted, and it is further

**ORDERED** defendant's cross-motion for summary judgment is denied, and it is further

**ORDERED** the classification of the subject merchandise by the United States Customs Service under subheading 7013.39.10, HTSUS, is reversed, and it is further

**ORDERED** the United States Customs Service shall reliquidate the subject merchandise under subheading 7010.90.20,

10. Defendant's arguments sounding in *ejusdem generis* have no merit. The doctrine of *ejusdem generis* is a tool of statutory construction providing that

when general words in a statute follow a specific enumeration of persons or things, the general words are not to be construed in their widest sense or meaning, but rather are to be limited, or held to apply, only to persons or things of the same kind or class as those specifically enumerated.

*Economy Cover Corp.,* 76 Cust.Ct. at 132, 411 F.Supp. 783. Because the Court holds a plain reading of the tariff provision provides *eo nomine* for the imported merchandise, resort to *ejusdem generis* is not necessary. *See Meco Elec. Prods. v. United States,* 14 CIT 181, 190, 1990 WL 33076 (1990) (Re, C.J.) ("As with all principles or canons of statutory interpretation, *ejusdem generis* is used only as an instrumentality for determining the legislative intent in cases where it is in doubt.") (quotations and citation omitted).